DAVIS, Director General of Railroads, v. UTAH CONST. CO. et al.

No. 4147.    Decided December 16, 1924.    (231 Pac. 816.)

1. APPEAL AND ERROR—FINDINGS NOT DISTURBED ON APPEAL, IF SUPPORTED BY ANY SUBSTANTIAL EVIDENCE. Where there is any substantial evidence to support findings of fact, they will not be disturbed on appeal.

See (1) 4 C. J. p. 878; (2) 35 Cyc. pp. 49, 58, 564, 565; (3) 35 Cyc. p. 43 (1926 Anno); (4) 35 Cyc. p. 43 (1926 Anno).

2. SALES—EVERY ELEMENT OF CONTRACT MUST BE PROVED IN ACTION ON EXECUTORY CONTRACT, BUT PROMISE TO PAY IS IMPLIED WHERE MATERIAL HAS BEEN ACCEPTED AND AMOUNT SUED FOR IS CORRECT. Where recovery is sought on executory contract to purchase material, and contract is denied, plaintiff is required to prove every element of contract, but where it is conceded that the material was delivered, accepted, and used, and that amount sued for is correct, the law, supplies, by implication, the necessary promise to pay therefor.

3. SALES—EVIDENCE HELD TO SUSTAIN FINDING THAT MATERIAL WAS SOLD TO BOTH OWNER AND CONTRACTOR. In action against owner and contractor for material furnished for construction of spur track, evidence *held* to sustain finding that the material was actually sold and delivered to both owner and contractor.

4. SALES—CONTRACT BETWEEN OWNER AND CONTRACTOR ADMISSIBLE IN ACTION AGAINST BOTH FOR MATERIAL. In action against owner and contractor for material furnished, involving issue as to whether the material was sold to both owner and contractor or to only one of them, contract between owner and contractor was admissible.

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight,* Judge.

Action by James C. Davis, as Director General of Railroads and as agent of the President under Transportation Act Feb. 28, 1920 (U. S. Comp. St. Ann. Supp. 1923, § 10071¼ et seq.), against the Utah Construction Company and J. A. McIlwee and Ray C. McIlwee, doing business as J. A. McIlwee & Son. Judgment for plaintiff, and defendants separately appeal.

AFFIRMED.

*Marshal, MacMillan & Crow,* of Salt Lake City, for appellant Utah Const. Co.

*Dey, Hoppaugh & Mark,* of Salt Lake City, for appellant McIlwee & Son.

*Geo. H. Smith, J. V. Lyle, R. B. Porter* and *Dana T. Smith,*
all of Salt Lake City, for respondent.

FRICK, J.

The transactions involved in this action took place at a
time when the Oregon Short Line Railroad was operated by
the federal government through James C. Davis as director
general of railroads, or by his predecessor, and hence Davis
was made the nominal plaintiff, although the Oregon Short
Line Railroad Company is the real party in interest.

The action was commenced by the director general, herein-
after called plaintiff, against both of the defendants to re-
cover judgment for material sold and delivered as alleged in
the complaint. The complaint states two causes of action.
In the first cause of action, omitting all matters of induce-
ment, it is in substance alleged that in October, 1919, and in
February, 1920, the plaintiff "sold and delivered to the said
defendants goods, wares, and material," describing them, "of
the reasonable value of" $7,632.32, no part of which has
been paid. In the second cause of action the same material is
described, and it is alleged that the same was "sold and
delivered" to the defendants, and that they "promised to
pay therefor" the said sum of $7,632.32. The plaintiff
prayed judgment for said sum, with interest.

The defendants filed separate answers in which each denied
that the material described in the complaint was sold and
delivered to the answering defendant, and each denied all
liability therefor.

Upon the foregoing issues the case was tried to the court
without a jury. Omitting the matters of inducement, the
court found that on the dates alleged in the complaint "plain-
tiff sold and delivered to the defendants above named goods,
wares, and material," describing the same of the value of
$7,632.32. The court further found that "the said defend-
ants promised and agreed with the plaintiff to pay it for
said material" the sum of $7,632.32. As a conclusion of law
the court found that the plaintiff was entitled to judgment

against the defendants jointly for said amount, and entered judgment accordingly.

Just before proceeding to the trial the respective parties stipulated in open court that the amount asked by plaintiff for the material is correct; that the material described in the complaint was all delivered either to one or to the other of the defendants; that the same was used in the construction of a railroad which is owned by the defendant J. A. McIlwee & Son, and was constructed by the defendant Utah Construction Compay as contractor for said J. A. McIlwee & Son; that one or the other of the two defendants is liable for said material; and that the only issue to be tried was which one of them is liable, each one denying liability. The plaintiff, however, contended that the material was sold and delivered to both of the defendants, and that they are both liable therefor.

The defendant Utah Construction Company will hereinafter be called company.

The plaintiff then produced his evidence, which, in substance, is to the effect that in the late summer or fall of 1919 the defendant J. A. McIlwee & Son desired to construct a railroad spur of a little over three miles in length to connect with the main line of the Oregon Short Line Railroad for the purpose of developing some phosphate deposits in Idaho; that J. A. McIlwee took up the matter of constructing the railroad with the assistant engineer of the Oregon Short Line Railroad Company, and asked the engineer to make a preliminary survey; that the engineer caused a preliminary survey to be made, the expense of which was paid by J. A. McIlwee & Son; that J. A. McIlwee & Son intended to construct the railroad themselves, and with that end in view sought information from the engineer aforesaid regarding material and prices; that the engineer promised J. A. McIlwee that he would take up the matter of obtaining the material from the Oregon Short Line Railroad Company with his superiors, and that he would later report to Mr. McIlwee regarding the matter; that the engineer accordingly took up the matter with his superiors, and obtained consent from them

to furnish the material that Mr. McIlwee wanted for the con-
struction of the railroad from the railroad officials, and re-
ported that fact to Mr. McIlwee, and also quoted the prices
for the several kinds of material that McIlwee wanted, all of
which was satisfactory to Mr. McIlwee; that at that stage
of the matter the engineer advised Mr. McIlwee that it would
be better for him to have an experienced contractor construct
the contemplated railroad, recommending the company as be-
ing a competent and reliable contractor to do the work; that
Mr. McIlwee then presented a proposed contract to construct
the railroad to the engineer for inspection; that afterwards
J. A. McIlwee & Son and the company executed the proposed
contract, and the company agreed to furnish the material
and labor, and to construct and complete the railroad for a
specified sum; that it was stipulated in the contract that the
company should have the benefit of any material that J. A.
McIlwee & Son had obtained at the same prices that they
were to pay therefor; that Mr. J. A. McIlwee, together with
a representative of the company, then went to the Oregon
Short Line Railroad Company's offices at Salt Lake City
and completed the arrangement for the material and the ship-
ment and delivery thereof; that it was expressly agreed that
the material should be billed against the company, and should
be delivered as directed by J. A. McIlwee & Son and the rep-
resentative of the company, which was accordingly done; that
all the material was delivered by the plaintiff as directed by
J. A. McIlwee & Son and by the company, and that all of it
was received and receipted for by the company, and used in
the construction of the railroad; that the company paid for
about $30,000 worth of the material, but refused to pay for
the material involved in this action; that the material in
question was billed against both the company and J. A.
McIlwee & Son, and payment was demanded from both of
them; that after the controversy arose respecting the pay-
ment for the material the president of the company wrote to
the plaintiff under date of July 4, 1920, as follows:

"I am in receipt of yours of June 30th, relative to some little
bills you have against our company, and note what you say about
your efforts to get this account settled up. We are sorry for the

trouble they have caused you and the delay in payment of this account. The reason for the delay has been that there was some question about who was to pay for these bills, as to whether we were to pay them or the company for whom we were doing this work. Of course there is no question about our responsibility to your company, and you can depend upon it that they will be straightened out this week."

There is much other evidence which no doubt would be material in settling the accounts as between the defendants, but it is not of controlling influence respecting the rights of the plaintiff, and hence we shall not refer to the same.

At the time of the trial the district court informed the defendants that it would not attempt to determine the liability of the defendants as between themselves, but would merely determine whether the defendants were jointly liable to the plaintiff, and the court disposed of the matter upon that theory, and made its findings and conclusions accordingly.

At the conclusion of plaintiff's case the company upon its own behalf, interposed a motion for nonsuit, which were denied. The defendants filed separate motion for a new trial, which were also denied. They have also taken separate appeals, and have assigned separate errors, in which they assail the findings of fact and conclusions of law.

The only question for us to determine upon this appeal is whether there is any substantial evidence in support of the court's findings of fact. If there is such evidence, we are powerless to interfere with the findings, and, if the findings are sustained, then it follows as a necessary corollary that the conclusions of law and judgment cannot be successfully assailed.

We have carefully examined the evidence as the same is preserved in the bill of exceptions, and we are clearly of the opinion that there is ample evidence to sustain the court's briefs, take the position that neither of their clients entered findings. Counsel for both defendants, in their respective into a contract with the plaintiff to purchase the material, and hence that neither is liable to pay therefor. The arguments of counsel in that regard would be more forceful if

we were here dealing with an executory contract to purchase material. Where recovery is sought upon an executory contract to purchase material, and the contract is denied, no doubt the plaintiff is required to prove every element of the contract. When, however, as here, it is conceded that the material for which recovery is sought was delivered, accepted, and used, and that the amount sued for is correct, then the law supplies by implication the necessary promise to pay therefor. But, upon the evidence, we are convinced that the district court was justified to find that the material was actually sold and delivered to both of the defendants, and not to only one of them. The mere fact that the company availed itself of the benefit of any material that J. A. McIlwee & Son might have obtained is a strong circumstance showing that the plaintiff's contention that J. A. McIlwee & Son had agreed to purchase the material is correct. Moreover, the arrangement subsequently made between Mr. McIlwee and the representative of the company on the one hand, and the railroad company upon the other, for the delivery of the material, to whom it should be billed, and the place of delivery, and the company's representative's agreement to the prices previously quoted to Mr. McIlwee, are alone sufficient to bind both defendants for the payment of the material. The testimony is clear and explicit that the railroad officials at no time released J. A. McIlwee & Son from their agreement; while, on the other hand, plaintiff contends that it also sold the same to the company. That is, that the two defendants jointly agreed to purchase the material and to pay therefor. There is certainly nothing incongruous, nor even unusual, for two individuals or two firms or corporations becoming liable for material that is to be delivered for the use and benefit of both. Here the delivery and sale of the material were intended for the benefit of both of the defendants, and they so regarded the matter at the time the arrangement was made with the railroad officials.

The inconsistency of the defendants' position is made palpably clear by what they demand at the hands of this

court. The company demands that the judgment against it be reversed, and that this court direct the district court to enter judgment in its favor. Upon the other hand, J. A. McIlwee & Son demand the same result as to them. We can thus see the predicament the plaintiff would have been confronted with if he had undertaken to sue each defendant separately. Had that been done, both defendants would have demanded judgment in their favor, while the plaintiff would have furnished the material for the construction of the railroad for the use and benefit of the defendants, but would have received no compensation therefor. That would have been the unavoidable result if the defendants' contentions had prevailed. Upon the other hand, neither of the defendants will suffer injustice by reason of the judgment entered against them. If there are any differences to adjust between them which they cannot or are unwilling to adjust amicably, the courts are open to them for an accounting, and the same can and will be made. It would, however, be unfair to plaintiff and a reproach to both the courts and the law to permit the defendants to avoid their obligations to plaintiff merely because they cannot adjust their differences between themselves.

The contention made on behalf of the company that the district court erred in admitting in evidence the contract between it and J. A. McIlwee & Son is clearly without merit. The contract was competent evidence for the purpose for which it was admitted.

In view of what has been said it follows that the judgment should be, and it accordingly is, affirmed, with costs.

WEBER, C. J., GIDEON and CHERRY, JJ., and WOOLLEY, District Judge, concur.

THURMAN, J., did not participate herein.