[Civ. No. 4225. Fourth Dist. Sept. 5, 1951.]

C. C. PEASE, Appellant, v. BEN F. JOHNSON et al., Respondents.

C. C. Pease, in pro. per., for Appellant.

George A. Westover for Respondents.

MUSSELL, J.—Plaintiff Carl Erikson brought this action to quiet title to mining claims situated in the Julian-Banner Mining District of San Diego County. Since this appeal was filed, C. C. Pease has been substituted as appellant, as the successor in interest of Erikson. The controversy herein concerns the validity of locations by the parties and their predecessors in interest of two mining claims, generally described in the record as the East and West Claims. These claims, particularly described in the findings, are parallel and are separated by what is known as the Golden Chariot Mine Patent Lot No. 39. Plaintiff claims title to the West Claim by virtue of location thereof alleged to have been made by Charles W. Carey on June 29, 1940, and a subsequent deed by Carey to Erikson. Defendants claim title by deed from one William. Crosby and also by location thereof on July 1, 1940.

The trial court found that the attempted location by Carey was void as the said claim was not then open for entry and found that the plaintiff's claimed predecessor in interest obtained no rights thereto. It was further found that after 12 o'clock noon, July 1, 1940, one William Crosby, defendants' predecessor in interest, filed a valid location notice upon this claim and subsequently, by deed, made a valid transfer thereof to defendants Ben Johnson and Ed Farris; that there was

no abandonment or forfeiture of this claim by the defendants and that they have been in possession and present upon the property at all times since 12 o'clock noon, July 1, 1940, and have done the required discovery and assessment work since said date. These findings are supported by substantial evidence.

There was testimony that Crosby located the West Claim in 1936 as the "Armistice" mining claim; that defendant Ben Johnson went on the property on June 30, 1940, and on the following day, with Crosby, relocated this claim, placed monuments around it, found mineral in place, mailed the location notice to the recorder's office in San Diego and thereafter did the necessary work upon the property. There is also substantial evidence that when Carey made his attempted location on June 29th, he knew of the prior location by Crosby and saw the defendants on the property prior to his own location thereof. He admitted that the reason he hurried to the recorder's office on July 1, 1940, was that he had noticed the defendants filling out location notices.

It is claimed by the appellant that Crosby was not in a position to locate this claim because of a lease which was executed on December 22, 1933, between Golden Chariot Mining Corporation, as lessor, and Crosby, as lessee, which lease covered the West Claim and other mining property. Plaintiff is not in a position to raise the question of the effect of the lease on Crosby's title. ▮ While it is true that a tenant may not contest the title of his landlord to a mining claim (*Storrs v Belmont Gold Min. & Mill. Co.*, 24 Cal.App.2d 551, 556 [76 P.2d 197]) it is also true that a tenant is not estopped to deny his landlord's title as against a stranger. (51 C.J.S., Landlord and Tenant, § 273, p. 919.) Evidence was introduced showing that the Golden Chariot Mining Company claimed no interest in the premises and there was no showing by plaintiff that he claimed title through the said mining company. ▮ Moreover, plaintiff is bound by the rule that one who seeks to quiet title against another must recover, if at all, on the strength of his own title. (*Del Giorgio* v. *Powers*, 27 Cal.App.2d 668, 685 [81 P.2d 1006].) ▮ Since plaintiff's predecessor in interest knew that Crosby was in possession of the property and that it had been located by him, the claimed location by Carey was not made in good faith. ▮ As this court said in *Brown* v. *Murphy*, 36 Cal.App.2d 171, 181 [97 P.2d 281]:

"Good faith confronts any subsequent locator who enters

upon the actual possession of a senior locator's land for the purpose of initiating a claim to the same ground, although the senior location be invalid, and when such entry is in bad faith, such intrusion constitutes a naked trespass. (*Little Sespe Consolidated Oil Co.* v. *Bacigalupi,* 167 Cal. 381 [139 P. 802]; *Talmadge* v. *St. John,* 129 Cal. 430, 436 [62 P. 79]; *Butte & Superior Copper Co.* v. *Clark-Montana Realty Co.,* 249 U.S. 12 [39 S.Ct. 231, 63 L.Ed. 447, 458].)"

The evidence is that the assessment work was done on this claim by defendants for the mining year ending at noon, July 1, 1940, and that the claim belonged either to the Golden Chariot Mining Corporation or to Crosby, who claimed by a prior location in 1936. Hence, the claim by Carey to the West Claim by reason of an alleged location on June 29, 1940, and recorded at or about 9 o'clock a.m., July 1, 1940, was premature and of no effect.

The record shows that Erikson filed location notices as to the East Claim in October of 1940 and at that time it was not subject to location, it having been located by the defendants after noon on July 1, 1940. ▮ The appellant claims that the defendants' locations on the East Claim are improper in that the discovery shaft was not near the point of discovery and no proper location notice was posted at the point of discovery. In this connection, Johnson testified that he and one Herman Wolf rebuilt the old monuments on this claim and placed notices in each of the monuments; that there was a vein of quartz there from which they took samples showing "gold colors"; that "We went to work there and did our assessment work on that claim right there. We dug a hole in there about 18 or 20 feet deep at that time, back in the hill, and at the face it was possibly 10 feet high and we dug it about 10 or 12 feet wide"; that they "erected the old monument and placed the location notice on it." Erikson admitted that when he located this claim in October, 1940, he found the monument erected "along side the cut" and there found a notice that the claim had been located by Crosby, and that Johnson and Wolf had signed as witnesses on the notice of location. This evidence was sufficient to support the trial court's finding that the claim was properly located, the necessary work done and the notices properly posted. ▮ Furthermore, as was said in *Ehrhart* v. *Bowling,* 36 Cal.App.2d 503, 508 [97 P.2d 1010]:

"It is well settled that one who has actual knowledge of the claims of another to mineral land cannot, in good faith, re-

locate the land because of technical defects in the making of the location. (*Stock* v. *Plunkett,* 181 Cal. 193 [183 P. 657]; *Kramer* v. *Sanguinetti,* 33 Cal.App.2d 303 [91 P.2d 604]; *Dennis* v. *Barnett,* 30 Cal.App.2d 147 [85 P.2d 916]; *Kern Oil Co.* v. *Crawford,* 143 Cal. 298 [76 P. 1111, 3 L.R.A. N.S. 993].)"

Erikson, having had actual knowledge of the location of the East Claim by the defendants, plaintiff cannot avail himself of technical defects, if any, in the making of the location of either of the two claims here involved.

█ There was a conflict in the evidence as to whether the necessary work was or was not done upon the claims by the parties. Erikson claimed that he could not find evidence of work. However, the defendants offered exhibits and testimony showing that the proper amount of work had been completed. This conflict was resolved in favor of the defendants and cannot here be disturbed.

█ The burden of proof rested upon the plaintiff to show that his title was superior to that of the defendants and he must recover upon the strength of his own title and not upon the weakness of the defendants' title. (*Casaletti* v. *McGuire,* 89 Cal.App.2d 777, 781 [201 P.2d 889].) The trial court's conclusion that the plaintiff did not establish his title by a preponderance of the evidence is sustained by the record.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied September 25, 1951, and appellant's petition for a hearing by the Supreme Court was denied November 1, 1951.